## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MAYAMARIE HALL, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | |
| v. | : | |
| | : | |
| AMERICAN AIRLINES, INC. and | : | PLAINTIFF DEMANDS A TRIAL BY |
| MARIA DAVIS (individually) | : | JURY |
| | : | |
| Defendants. | : | |

Plaintiff, MAYAMARIE HALL, by and through undersigned counsel hereby files this Civil Action Complaint against Defendants AMERICAN AIRLINES, INC. and MARIA DAVIS (individually) (collectively "Defendant") and avers the following:

### PARTIES

1. PLAINTIFF MAYAMARIE HALL (hereinafter also referred to as "PLAINTIFF") is a female individual who is a resident of the Commonwealth of Pennsylvania.

2. At all times material, Defendant, AMERICAN AIRLINES, INC. (hereinafter also referred to as "Defendant AA"), was and still is a foreign corporation organized and existing by virtue of the laws of the Commonwealth of Pennsylvania with a place of business located at 8000 Essington Avenue, Philadelphia, PA 19153.

3. Defendant MARIA DAVIS (hereinafter also referred to as "Defendant DAVIS") was and still is employed by Defendant AA as a Union Representative.

4. At all times material, Defendant DAVIS maintained supervisory authority over PLAINTIFF.

5. At all times material, Defendants were the joint and/or sole employers of PLAINTIFF.

## NATURE OF THE CASE

6.   PLAINTIFF complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2003-17 (amended in 1972, 1978, by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"); 42 U.S.C.; the Pennsylvania Human Relations Act, as amended, 43 P.S. 951, *et. seq*. ("PHRA"); as well as the Philadelphia Fair Practices Ordinance ("PFPO"); and seeks damages to redress the injuries PLAINTIFF has suffered as a result of being subjected to discrimination, retaliation, and wrongful termination by the aforementioned Defendants.

7.   Furthermore, this action is to redress the Defendants' unlawful employment practices against PLAINTIFF, including Defendants' unlawful discrimination against PLAINTIFF because of her sex and for Defendants wrongful actions against PLAINTIFF leading up to, and including, her unlawful termination.

8.   PLAINTIFF seeks declaratory and injunctive relief, actual damages, compensatory damages, punitive damages, reinstatement, attorneys' fees, litigation costs, and pre- and post-judgment interest as remedies for Defendants' violations of her rights.

## JURISDICTION AND VENUE

9.   This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

10. This Court has jurisdiction in that this action involves a Federal Question under Title VII of the Civil Rights Act of 1964.

11. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

12. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343 which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any

person to redress the deprivation, under color of any State Law, statue, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

13. Venue is proper in the Eastern District of Pennsylvania based upon Defendants' residency and that a substantial part of the events or omissions giving rise to the claims occurred within Philadelphia County in the Commonwealth of Pennsylvania in the Eastern District of Pennsylvania. 28 U.S.C. § 1391(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14. On or around July 20, 2021, PLAINTIFF filed a sex-based Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein.

15. On or around January 3, 2022, PLAINTIFF filed a retaliation-based Charge of Discrimination with the EEOC.

16. PLAINTIFF's Charges of Discrimination were dual filed with the Pennsylvania Human Resources Commission ("PHRC") and the Philadelphia Commission on Human Relations ("PCHR").

17. On or about June 1, 2022, the EEOC sent a Dismissal and Notice of Rights to PLAINTIFF by electronic mail.

18. This action is hereby commenced within ninety (90) days of receipt of the Dismissal and Notice of Rights.

19. PLAINTIFF has complied with all administrative prerequisites to bring this lawsuit.

20. PLAINTIFF's PHRA and PFPO claims are still pending because less than one year has elapsed since Plaintiff filed with the PHRC and PCHR.

21. PLAINTIFF will seek to amend her complaint to assert the newly ripened causes of action under the PHRA and PFPO against the parties referenced above. See Fed. R. Civ. P. 15(a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiffs may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.").

## **MATERIAL FACTS**

22. In or around July 2011, PLAINTIFF began working for Defendant AA as a Customer Service Operations Agent.

23. Throughout her employment, PLAINTIFF worked diligently in her position and received praise for her work performance.

24. During her employment with Defendant AA, PLAINTIFF was sexually harassed by her coworker, Aderick Boyd (male).

25. Specifically, Mr. Boyd repeatedly groped PLAINTIFF's body, hit PLAINTIFF's buttocks, and touched PLAINTIFF's breasts.

26. At all times, PLAINTIFF opposed the unwelcome and unwanted sexual harassment.

27. Upon information and belief, Defendant AA was aware that Mr. Boyd engaged in sexually harassing and sexually assaultive conduct towards Defendant AA's female employees.

28. Around August 3, 2020, Mr. Boyd deliberately stood near PLAINTIFF at her workstation.

29. Given Mr. Boyd's frequent unwelcome and unwanted touching of PLAINTIFF, PLAINTIFF was extremely uncomfortable working near Mr. Boyd.

30. PLAINTIFF asked Mr. Boyd to move away from her workstation, but Mr. Boyd refused to move away from PLAINTIFF.

31. When Mr. Boyd refused to move, PLAINTIFF again requested that he relocate away from her workstation.

32.  Mr. Boyd then escalated the situation into a physical altercation and slammed PLAINTIFF against a wall.

33. Fearful for her safety, PLAINTIFF threw a trash can lid at Mr. Boyd in an effort to defend herself against Mr. Boyd.

34.  PLAINTIFF was so distraught and traumatized after this incident that she immediately left work and did not return.

35. On August 19, 2020, PLAINTIFF received a call from her manager, Raymond Boseman, inquiring why PLAINTIFF had not been at work the past few weeks.

36. During this call, PLAINTIFF informed Mr. Boseman of the August 3, 2020 incident.

37. After PLAINTIFF disclosed this incident, Defendant AA conducted an investigative hearing with PLAINTIFF on August 27, 2020.

38. Upon information and belief, Defendant AA also held an investigative hearing with Mr. Boyd.

39. On September 1, 2020, PLAINTIFF and Mr. Boyd were both terminated as a result of the August 3, 2020 incident.

40. A few weeks after her termination, PLAINTIFF filed a union grievance.

41. Subsequently, PLAINTIFF participated in a Step 1 Grievance Hearing with Defendant AA.

42. After her grievance hearing, PLAINTIFF did not hear back from Defendant AA.

43. In or around July 2021, PLAINTIFF spoke to several employees of Defendant AA, who informed PLAINTIFF that Mr. Boyd had been rehired by Defendant AA.

44. PLAINTIFF was shocked by this, as she and Mr. Boyd were terminated for the same reason, yet PLAINTIFF was not offered her original job, or any job, with Defendant AA.

45. Having not heard from Defendant AA regarding her rehire, PLAINTIFF filed a sex-based charge of discrimination with the EEOC (EEOC No. 530-2021-04056) on July 20, 2021.

46. Specifically, in her EEOC Charge of Discrimination, PLAINTIFF included that Mr. Boyd, male, was rehired by Defendant AA in February 2021 at a Step 3 Union Hearing, while PLAINTIFF was only afforded a Step 1 Union Hearing, never heard back from the union, and was never reinstated by Defendant AA.

47.  On August 10, 2021, PLAINTIFF received a call from Defendant DAVIS.

48. Defendant DAVIS held a union hearing with PLAINTIFF regarding her termination.

49. On August 19, 2021, PLAINTIFF, Defendant DAVIS, and union representative Billy Wilson attended the hearing to discuss PLAINTIFF's termination.

50. At the conclusion of the hearing, Defendant DAVIS told PLAINTIFF that she would hear back from the union within twenty (20) days regarding her possible rehire.

51. Approximately sixty (60) days after the initial union hearing, in or around October 2021, Defendant DAVIS called PLAINTIFF and told her that she would not be reinstated.

52. During this conversation, Defendant MARIA DAVIS told PLAINTIFF "**if you weren't attempting to sue the company, you could have gotten your job back**."

53. Upon information and belief, Defendant DAVIS was instructed by Defendant AA not to reinstate PLAINTIFF.

54. As a result of Defendants' actions, PLAINTIFF felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

55. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and PLAINTIFF also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

56. That as a result of Defendants' conduct, the PLAINTIFF was caused to sustain serious and permanent personal injuries, including but not limited to permanent psychological injuries.

57. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, PLAINTIFF demands Punitive Damages against all the Defendants jointly and severally.

58. PLAINTIFF further claims aggravation, activation and/or exacerbation of any preexisting condition.

59. PLAINTIFF claims that Defendants unlawfully discriminated against PLAINTIFF because of her sex and because she complained of an opposed the unlawful conduct of Defendants related to the above protected class.

60. PLAINTIFF further claims constructive and/or actual discharge to the extent PLAINTIFF is terminated from PLAINTIFF's position as a result of the unlawful discrimination and retaliation.

61. The above are just some examples, of some of the discrimination and retaliation to which Defendants subjected PLAINTIFF to on a continuous and on-going basis throughout PLAINTIFF's employment.

62. The Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

63. PLAINTIFF claims alternatively that PLAINTIFF is an Independent Contractor, and PLAINTIFF makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, PLAINTIFF claims that Defendant owed and breached its duty to PLAINTIFF to prevent the harassment, discrimination, and retaliation and is liable therefore for negligence.

64. PLAINTIFF claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

**COUNT I**
**DISCRIMINATION**
**UNDER TITLE VII**
**(against Defendant AA only)**

65. Plaintiff, Mayamarie Hall, hereby incorporates all allegations contained in the above paragraphs as fully as if they were set forth at length.

66. Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

60. Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

61. Defendants engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Plaintiff with respect to her compensation, terms, conditions

of employment because of Plaintiff's sex. Defendants subjected Plaintiff to adverse tangible employment actions—defined as significant changes in Plaintiff's employment status, discipline, denial of training, failure to promote, reassignment with significantly different job responsibilities, and decisions causing changes in significant changes in her employment benefits.

62. Plaintiff's protected characteristics played a determinative factor in Defendants' decisions.

63. Defendants cannot show any legitimate nondiscriminatory reasons for their employment practices and any reasons proffered by Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

64. Alternatively, Plaintiff's protected status played a motivating part in Defendants' decisions even if other factors may also have motivated its actions against Plaintiff.

65. Defendants acted with the intent to discriminate.

66. Defendants acted upon a continuing course of conduct.

67. Defendants acted with the intent to discriminate against Plaintiff because of her sex.

68. Defendants wrongfully terminated Plaintiff, in violation of Title VII, solely or in part, because of her sex.

69. Defendants wrongfully terminated Plaintiff, in violation of Title VII solely or in part because PLAINTIFF is a female.

70. As a result of the Defendant AA's violations of Title VII, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT II**
**HOSTILE WORK ENVIRONMENT**
**UNDER TITLE VII**
**(against Defendant AA only)**

71. Plaintiff, Mayamarie Hall, hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

72. Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

73. An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

74. Respondent superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action." Andrews v. city of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

75. Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

76. The Third Circuit has held that the retaliation provision of Title VII "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." Jensen v. Potter, 435 F.3d 444, 446 (3d Cir. 2006).

77. Here, Defendant's conduct occurred because of Plaintiff's legally protected characteristics and was severe or pervasive enough to make a reasonable person of the same legally protected

class (sex/gender-female) believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

78. Plaintiff's supervisors had the authority to control Plaintiff's work environment, and they abused that authority by permitting Mr. Boyd to engage in conduct despite knowing of it, thus creating a hostile work environment.,

79. Sexually explicit and verbally- and physically- harassing conduct filled the environment of Plaintiff's work area.

80. Defendant AA, and its' supervisory employees, knew that the sexually explicit and verbally- and physically- harassing conduct filled Plaintiff's work environment.

81. Sexually explicit verbally- and physically- harassing conduct occurred on an almost if not daily basis.

82. Sexually explicit verbally- and physically- harassing conduct caused Plaintiff to sustain severe emotional distress resulting in physical illness.

83. Plaintiff subjectively regarded the sexually explicit verbally- and physically- harassing conduct as unwelcome and unwanted and objectively opposed the conduct.

84. The conduct was both severe and pervasive.

85. The conduct was emotionally damaging and humiliating.

86. The conduct unreasonably interfered with Plaintiff's work performance.

87. The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

88. Defendant AA, and its' supervisory employees, provided a futile avenue for complaint.

89. Defendant AA, and its' supervisory employees, acted upon a continuing course of conduct.

90. As a result of Defendant AA and its' supervisory employees' violations of Title VII, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT III**
**RETALIATION**
<u>**UNDER TITLE VII**</u>
**(against Defendant AA only)**

91. Plaintiff, Mayamarie Hall, hereby incorporates all allegations contained in the above paragraphs as fully as if they were set forth at length.

92. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer: "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

93. Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). <u>Moore v. City of Philadelphia</u>, 461 F.3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.").

94. Title VII's anti-retaliation provision also protects employees who speak out about discrimination by answering questions during an employer's internal investigation. <u>Crawford v. Metropolitan Gov't of Nashville and Davidson Cty., Tennessee</u>, 555 U.S. 271, 277 (2009) (declaring that there is "no reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a

freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.").

95. Retaliation need not be job-related to be actionable under Title VII—an employer can effectively retaliate against an employee by taking actions not directly related to her employment or by causing her harm outside the workplace. White, 548 U.S. at 61-62 (rejecting authority from the Third Circuit and others requiring that the plaintiff suffer an adverse employment action in order to recover for retaliation).

96. "[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that 'he was acting under a good faith, reasonable belief that a violation existed.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); and Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir.1995).

97. An employee need not be a member of a protected class to be subject to actionable retaliation under Title VII. See Moore, 461 F.3d at 342 ("Title VII's whistleblower protection is not limited to those who blow the whistle on their own mistreatment or on the mistreatment of their own race, sex, or other protected class."

98. Title VII not only bars retaliation against the employee who engaged in the protected activity; it also bars retaliation against another employee if the circumstances are such that the retaliation against that employee might well dissuade a reasonable worker from engaging in protected activity. See Thompson v. North American Stainless, LP, 131 S. Ct. 863, 868 (2011).

99. Here, the Defendant AA, and its' supervisory employees, retaliated against Plaintiff because of her protected activity under Title VII.

100.     Plaintiff acted under a reasonable, good faith belief that her right to be free from discrimination on the basis of sex/gender was violated.

101.     Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

102.     Defendant AA, and its' supervisory employees, engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

103.     There was a causal connection between the Defendant AA, and its' supervisory employees, materially adverse actions, and Plaintiff's protected activity.

104.     Defendant AA, and its' supervisory employees, actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

105.     Defendant AA, and its' supervisory employees, acted upon a continuing course of conduct.

106.     Plaintiff will rely on a broad array of evidence to demonstrate a causal link between their protected activity and the Defendant AA, and its' supervisory employees, actions taken against her, such as the unusually suggestive proximity in time between events, as well as Defendant AA supervisory employees' antagonism and change in demeanor toward Plaintiff after Defendant AA, and its' supervisory employees, became aware of Plaintiff's protected activity.

107.     As a result of the Defendant AA, and its' supervisory employees, violations of the PHRA, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation,

emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT IV**
**DISCRIMINATION**
**UNDER PHRA § 955**
**(against all Defendants)**

108.    Plaintiff, Mayamarie Hall, repeats and realleges every allegation made in the above paragraphs of this complaint.

109.    Plaintiff's PHRA claims are still pending before the EEOC and PHRC.

110.    Plaintiff will seek leave to amend this complaint at the appropriate time to assert her PHRA claims against Defendants. See Federal R. Civ. P. 159a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleasing), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

**COUNT V**
**RETALIATION**
**UNDER PHRA § 955**
**(against all Defendants)**

111.    Plaintiff, Mayamarie Hall, repeats and realleges every allegation made in the above paragraphs of this complaint.

112.    Plaintiff's PHRA claims are still pending before the EEOC and PHRC.

113.    Plaintiff will seek leave to amend this complaint at the appropriate time to assert her PHRA claims against Defendants. See Federal R. Civ. P. 159a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleasing), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

**COUNT VI**
**DISCRIMINATION**
**UNDER PHRA – AIDING AND ABETTING**
**(against individually named Defendants only)**

114.    Plaintiff, Mayamarie Hall, repeats and realleges every allegation made in the above

paragraphs of this complaint.

115.    Plaintiff's PHRA claims are still pending before the EEOC and PHRC.

116.    Plaintiff will seek leave to amend this complaint at the appropriate time to assert

her PHRA claims against Defendants. See Federal R. Civ. P. 159a) (Courts "freely give leave to

amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original

pleasing), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction,

occurrence, or event that happened after the date of the pleading to be supplemented").

**COUNT VII**
**DISCRIMINATION**
**UNDER PFPO**
**(against all named Defendants)**

117.    Plaintiff, Mayamarie Hall, repeats and realleges each and every allegation made in

the above paragraphs of this complaint.

118.    The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an

unlawful employment practice to deny or interfere with the employment opportunities of an

individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a

related medical condition), sexual orientation, gender identity, religion, national origin, ancestry,

age, disability, marital status, familial status, genetic information, or domestic or sexual violence

victim status, including, butnot limited to, the following: (a) For any employer to refuse to hire,

discharge, or otherwise discriminate against any individual, with respect to tenure, promotions,

terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

119.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against PLAINTIFF because of PLAINTIFF'S sex.

120.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Philadelphia Fair Practices Ordinance Chapter 9-1100.  Plaintiff claims violations of the Philadelphia Fair Practice Ordnance due to Defendants' discrimination against Plaintiff's sex.

**COUNT VIII**
**RETALIATION**
**UNDER PFPO**
**(against all named Defendants)**

121.    Plaintiff, Mayamarie Hall, repeats and realleges every allegation made in the above paragraphs of this complaint.

122.    The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be unlawful discriminatory practice: " For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she or it has complied with the provisions of this Chapter, exercised his, her or its rights under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder."

123.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against the Plaintiff

because of PLAINTIFF'S opposition to the unlawful employment practices of Plaintiff's employer.

**COUNT XI**
**DISCRIMINATION**
**UNDER PFPO – AIDING AND ABETTING**
**(against individual Defendants only and not against corporate Defendant)**

124.    Plaintiff, Mayamarie Hall, repeats and realleges every allegation made in the above paragraphs of this complaint.

125.    The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

126.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.  The individual Defendants aided and abetting the campaign of discrimination, harassment and retaliation against Plaintiff due to Plaintiff's sex, and in retaliation for Plaintiff opposing said discrimination and harassment in the workplace.

**JURY DEMAND**

PLAINTIFF requests a jury trial on all issues to be tried.

**DEMAND TO PRESERVE EVIDENCE**

The Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims, her claims to damages,

to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.

## **PRAYER FOR RELIEF**

**WHEREFORE**, PLAINTIFF demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damaged, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

**DEREK SMITH LAW GROUP, PLLC**

*/s/ Tova L. Rabin_____*
Tova L. Rabin, Esq.
1835 Market Street
Suite 2950
Philadelphia, PA 19103
tova@dereksmithlaw.com
267-332-1692

August 22, 2022